**SIGNED THIS: October 27, 2021**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    20-71280 |
| CHRISTOPHER M. VANHUSS, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| CENTRAL LABORERS' | ) | |
| PENSION FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    21-07009 |
| | ) | |
| CHRISTOPHER M. VANHUSS, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court is the Debtor's Motion to Dismiss the Second Amended Adversary Complaint. For the reasons set forth herein, the motion will be

granted. The Second Amended Adversary Complaint will be dismissed without leave to replead. This adversary proceeding will be dismissed with prejudice.

## I.    Factual and Procedural Background

Christopher M. VanHuss ("Debtor") filed his voluntary petition under Chapter 7 on December 2, 2020. The Debtor disclosed that he had been a shareholder, officer, and director of Custom Curbs, Inc. ("Custom Curbs"), which ceased doing business in January 2020. He listed more than two dozen different union funds as potential creditors on his schedules, marking each one as contingent and disputed. The Debtor also listed six pending lawsuits filed against him by various union funds to collect moneys owed by Custom Curbs to the funds.

Central Laborers' Pension Fund ("Central Laborers'") filed an adversary complaint against the Debtor alleging that $9449.67 owed by Custom Curbs to Laborers' Local 477 and to the Southern and Central Illinois Laborers' Vacation Fund should be determined to be an obligation of the Debtor and excepted from his discharge. Because its initial complaint was improperly captioned, Central Laborers' was required to file an amended complaint before summons issued.

In its Amended Adversary Complaint ("First Amended Complaint"), Central Laborers' acknowledged that it had no direct interest in the funds but rather was the collection agent for the entities to whom the amounts were actually owed. Central Laborers' claimed that the amounts due related to

deductions taken from the gross pay of four employees of Custom Curbs and that the conduct of the Debtor in not forwarding payments to the entities to whom the money was owed was willful and malicious.

The Debtor filed a motion to dismiss the First Amended Complaint asserting that Central Laborers' did not have standing to bring the complaint and had not stated a plausible cause of action to pierce the veil of Custom Curbs and except the debt from his discharge. After the issues were fully briefed, the motion to dismiss was granted in an oral decision.[1] This Court found for the Debtor on all issues: Central Laborers' did not have standing to file the proceeding and had not stated a plausible cause of action. Specifically, this Court found that the documents that Central Laborers' relied on to assert standing did not sufficiently assign the debt to Central Laborers' so that it could sue in its own name. To the contrary, the documents contemplated that if legal action were necessary for collection, Central Laborers' was authorized to file suit in the name of the real parties in interest—the entities to whom the funds were actually owed. Further, Central Laborers' failed to allege any facts to support a plausible basis to pierce the veil of Custom Curbs; pleading only that the Debtor was a shareholder, officer, and director of Custom Curbs who managed the day-to-day operations of the business was insufficient as a matter of law. Finally, pleading only that the Debtor's conduct was willful and malicious, without alleging any facts to support such a conclusion, did not state a plausible cause of action to except the debt from the Debtor's discharge;

---

[1] A PDF of the audio of the ruling (#17) and a written transcript thereof (#20) have been docketed and were consulted in rendering this Opinion.

Central Laborers' made no more than a formulaic recitation of the elements of its intended cause of action. The Court granted Central Laborers' leave to file a second amended complaint but cautioned that it was unlikely, based on what had been presented so far, that a further amended complaint could survive another motion to dismiss. Central Laborers' was admonished that a second amended complaint should not be filed unless there was "a whole lot more to the story" than had been included in the prior complaint.

Notwithstanding the admonishment, the Second Amended Adversary Complaint ("Second Amended Complaint") was filed with Jeff Arkebauer, Nicholas Clark, Ryan Lawton, and Christopher Raney identified as the Plaintiffs instead of Central Laborers'.[2] The Second Amended Complaint was filed by the same attorney who had previously represented Central Laborers', but leave to substitute parties was not requested before the filing. Although the four individuals were named in the caption and introduction to the Second Amended Complaint, the pleading was signed by the attorney on behalf of Central Laborers' without reference to the individuals.

In the Second Amended Complaint, the Plaintiffs allege that they worked for Custom Curbs as laborers and that deductions taken from their gross pay for union dues and vacation pay were never forwarded to the union or the vacation fund. They claim that Custom Curbs was a party to a collective bargaining agreement that required Custom Curbs to make deductions from

---

[2] The four individuals are collectively referred to as the Plaintiffs because that is how they have designated themselves. Use of the term should not be construed as a finding that they were properly substituted as parties in this proceeding. To the contrary, Central Laborers' remains on the docket as the lead plaintiff, and the caption of this proceeding has not changed.

their pay and forward the funds deducted to the union or the appropriate benefit fund. They admit, however, that they were not parties to the collective bargaining agreement and that they, in fact, do not have standing to enforce that agreement. Notwithstanding their admitted lack of standing, the Plaintiffs claim that not only Custom Curbs but also the Debtor, individually, violated the collective bargaining agreement and caused them damages for which they seek both compensation and a judgment of nondischargeability. They claim that the Debtor is personally liable because he was an officer, director, and shareholder of Custom Curbs and because he received payments from "his business bank accounts" during the same time period when the payments were not made by Custom Curbs to the union and the vacation fund. They assert that the debt is nondischargeable because, in their view, the nonpayment constituted willful and malicious conversion.

The Debtor filed a motion to dismiss the Second Amended Complaint alleging that the Plaintiffs lack standing and that they failed to state a plausible cause of action to pierce the corporate veil of Custom Curbs and except the debt from his discharge. Prior to responding to the motion to dismiss, the Plaintiffs filed a motion seeking leave to amend their complaint to correct the signature of the attorney to reflect that it was made on behalf of the new Plaintiffs rather than Central Laborers'. The Court declined to grant the motion, instead taking it under advisement with the motion to dismiss.[3] The

---

[3] Although the Plaintiffs argued that cleaning up what they called a typographical error was a routine matter and that leave to amend should be liberally granted under such circumstances, the motion was not granted because the issue

parties have now fully briefed the issues, and the motion to dismiss is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). The issues here arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.    Legal Analysis

To survive a motion to dismiss, a complaint must allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must (1) provide a defendant with fair notice of the claim that is made against him and the grounds for the relief requested and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R.

---

of whether the Plaintiffs had been properly substituted remained open. Granting a routine motion for leave to file an amended complaint might be construed as mooting or waiving that issue.

Bankr. P. 7008. The fair notice requirement means, "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Iqbal*, 556 U.S. at 678-79; *see also Olson v. Champaign Cty.*, 784 F.3d 1093, 1098-99 (7th Cir. 2015).

As for the plausibility requirement, "[a] claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept as true all well-pleaded factual allegations contained within a complaint. *Iqbal*, 556 U.S. at 678. Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

The Debtor says that the Plaintiffs have failed to plausibly state a cause of action to pierce Custom Curbs' corporate veil and find that the Debtor converted funds of the Plaintiffs. Further, the Debtor asserts that the Plaintiffs have made no plausible claim that they have standing to bring this proceeding. In response, the Plaintiffs argue, correctly to a large degree, that they have given the Debtor clear notice of their claims. But the Plaintiffs wholly ignore, in

both their Second Amended Complaint and their brief in response to the motion to dismiss, the requirement of stating a plausible basis for those claims. It is for that reason that the motion to dismiss will be granted and this adversary proceeding will be dismissed with prejudice.

## A. The Plaintiffs Lack Standing

This adversary proceeding was initially brought by Central Laborers' acting as a collection agent for Laborers' Union Local 477 and a related vacation benefit fund. In dismissing the First Amended Complaint, this Court found that Central Laborers' did not have standing to file the proceeding; the documents it relied on for standing specifically provided that Central Laborers' would not acquire any interest in the funds it was collecting and contemplated that any legal action would be filed in the name of the union and benefit fund. Central Laborers' apparently has conceded that issue as it has abandoned— albeit without following proper procedures—its position as a plaintiff in this proceeding.[4]

The Plaintiffs now are four individuals who worked for Custom Curbs and whose union dues and vacation pay deductions were not paid to the union and vacation fund. They acknowledge that they were not parties to the collective bargaining agreement upon which their claim is based and admit

---

[4] Federal Rule of Civil Procedure 15(a)(2) requires leave of court to amend a complaint under the circumstances presented here. Leave was granted to Central Laborers' to file an amended complaint but no leave was sought by or granted to the new Plaintiffs to file an amended complaint. Federal Rule of Civil Procedure 17(a)(3) allows for ratification, joinder, or substitution of parties but does not provide for such actions to be taken without leave of court.

that they do not have standing to enforce that agreement.[5] Apparently, because they have attempted to state a cause of action in tort for conversion rather than a cause of action for breach of contract, the Plaintiffs believe they have cured any defects related to their standing. They are wrong; they have not established that they have standing to bring this proceeding.

Standing is generally discussed in the context of either constitutional or prudential standing. A standing inquiry asks whether a party is entitled to have a court review the merits of the case presented. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing in the constitutional sense is an element of the case or controversy requirement of Article III of the Constitution. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) (citing *Warth*, 422 U.S. at 498). To have constitutional standing, a litigant must allege both that their injury is concrete and actual or imminent and that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). Article III standing is a jurisdictional prerequisite to reaching the merits of a suit. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citation omitted). The party whose standing is challenged has the burden of establishing their standing by a preponderance of the evidence. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998) (citation omitted);

---

[5] A full discussion of individual union members' rights with respect to collective bargaining agreements is beyond the scope of this Opinion. The Court's view, however, is that the issue is more nuanced than the Plaintiffs suggest and that it should not be said that individual union members can never enforce such agreements. But here, under the facts presented, the issue is not controlling; the Plaintiffs allege no individual injuries, and it is on that basis that they are found to lack standing.

*Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (citations omitted).

The concept of prudential standing is grounded not in Article III of the Constitution but in the exercise of judicial self-governance designed to guarantee that courts only resolve disputes that are appropriate for judicial resolution. *Warth*, 422 U.S. at 500. Prudential standing generally commands that a party may not assert the rights of other persons or entities. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-28 (2014). Prudential limitations on standing, unlike constitutional limitations, are subject to waiver and are not jurisdictional. *RK Co. v. See*, 622 F.3d 846, 851-52 (7th Cir. 2010) (citations omitted).

Standing is not dependent on the merits of a party's claim but nevertheless often turns on the nature and origin of the claim. *Warth,* 422 U.S. at 500. Thus, determining whether a person has standing requires a fact-based analysis of the person's right to invoke the jurisdiction of the court to resolve the problem at hand. The principles of both constitutional and prudential standing dictate that a plaintiff must be a creditor of the debtor to have standing to prosecute a claim against a debtor that a particular debt is nondischargeable.[6] Fed. R. Bankr. P. 4007(a); *Premier Capital, LLC v. Gavin (In re Gavin)*, 319 B.R. 27, 31 (B.A.P. 1st Cir. 2004) (citation omitted). In other

---

[6] Under Rule 4007(a), a debtor may also bring a complaint to determine the dischargeability of a debt. Fed. R. Bankr. P. 4007(a). Debtors, however, usually only seek a determination that particular debts such as debts for taxes or student loans are dischargeable.

words, when a creditor brings an action under §523(a), the debt sought to be excepted from discharge must be owed to that creditor.

Here, the Plaintiffs lack constitutional standing because they do not allege any concrete or actual injury sustained by them. They suggest that the Debtor knew that their union memberships might be in jeopardy if their dues were not paid, but they do not allege that they actually suffered any such injury. With respect to the nonpayment of vacation benefit funds, the Plaintiffs likewise do not allege that they lost vacation pay or were otherwise damaged by Custom Curbs' nonpayment of the vacation funds; they do not even allege that the Debtor had knowledge of any potential injury they might suffer if the deductions were not paid to the vacation fund.

According to the Second Amended Complaint, the alleged nonpayment of union dues and vacation funds occurred between July 2018 and December 2018. Thus, by June 2021 when the Second Amended Complaint was filed, the Plaintiffs knew whether they had been injured by termination of their union memberships or by having to pay their dues out of their own pockets to retain their memberships, and they knew whether their entitlement to vacation pay had been impacted. As union members, the Plaintiffs most certainly have a contractual relationship with the union that controls their respective rights when an employer fails to remit deductions. Undoubtedly then, the Plaintiffs also knew whether the consequences of Custom Curbs' nonpayment actually fell on them or instead on the union and related benefit funds. Nevertheless, they do not allege that they, in fact, suffered any damages or injury by reason

of the nonpayment of their union dues and vacation fund deductions. Taking all well-pleaded allegations as true, the Plaintiffs have established nothing more than that Custom Curbs, under the management of the Debtor, failed to pay an obligation owed to the union and vacation funds. Absent any allegations of actual injury or damage to themselves, the Plaintiffs lack constitutional standing.

The Plaintiffs lack prudential standing based on their admission that they are collecting for the union and vacation fund; they assert that they want a judgment for the funds so that the funds can be paid to the union and to the vacation fund. The collective bargaining agreement signed by Custom Curbs required Custom Curbs to remit union employee deductions to the union and benefit funds—not to the employees. Paying funds to the employees now would not satisfy the contractual obligations of Custom Curbs. The union and benefit funds were always the real parties in interest regarding Custom Curbs' compliance with the collective bargaining agreement, and nothing in the Second Amended Complaint suggests otherwise. Because other entities—not the Plaintiffs—suffered whatever injury resulted from the nonpayment, the Plaintiffs do not have prudential standing.[7]

In their response to the motion to dismiss, the Plaintiffs do not address the requirements for constitutional or prudential standing. Rather, as

---

[7] An issue of prudential standing is also raised by the Plaintiffs' claims and prayer for relief seeking a joint judgment for over $9000. Even if the Plaintiffs had standing, they would each only be owed and have standing to collect the amounts deducted from their own paychecks; none of the individuals have prudential standing to collect the amounts deducted from the pay of the other individuals. Although this may appear to be a minor detail, it evidences the lack of diligence by the Plaintiffs' counsel in thinking through the standing issues discussed at length by the Court when the First Amended Complaint was dismissed.

mentioned above, they concentrate their argument on whether the Debtor has notice of the claims against him and whether their Second Amended Complaint relates back to the First Amended Complaint. They understand that this is important because the deadline to bring a complaint to determine dischargeability of a debt under §523(a)(6) had long passed before they filed the Second Amended Complaint. Fed. R. Bankr. P. 4007(c); 11 U.S.C. §523(c). The Plaintiffs assert that substitution of a party after the filing deadline is appropriate if the original complaint was timely filed, the contested debt was clearly identified, and the defendant has not been prejudiced. *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 68 (7th Cir. 1997).

 The Plaintiffs' argument is correct but only as far as it goes. Substitutions of parties may be allowed after a limitations period has run under certain circumstances. *Id.* But the party being substituted must be the real party in interest. Fed. R. Civ. P. 17; Fed. R. Bankr. P. 7017. Substituting a party without standing for another party without standing does not create standing. The Plaintiffs' argument responds only to the issue of whether their Second Amended Complaint could be considered timely. The Court does not reach that issue because the Plaintiffs lack standing to bring the action in any event.

Why the union and vacation benefit fund are not prosecuting this action is unknown. Perhaps they understand that, even though they might have the requisite standing to collect from Custom Curbs, the argument that they can collect from the Debtor and that the amounts due to them should be excepted

from his discharge is weak. As will be discussed below, regardless of the standing issue, no plausible claim can be stated to pierce the corporate veil of Custom Curbs and except the debt at issue from the Debtor's discharge. Accordingly, there is no reason to allow further amendment to see if entities with standing will attempt to be substituted.[8] Fed. R. Civ. P. 17(a)(3); Fed. R. Bankr. P. 7017. The dismissal will be without leave to amend.

### B. Piercing Custom Curbs' Corporate Veil

Even if the Plaintiffs had standing to proceed, they would have to pierce the veil of Custom Curbs in order to hold the Debtor personally responsible for Custom Curbs' obligations under the collective bargaining agreement; the Plaintiffs have not suggested any other basis by which they might collect the debt from the Debtor personally. In the Second Amended Complaint, the Plaintiffs allege that the Debtor was the sole shareholder, officer, and director of Custom Curbs and managed its day-to-day operations. But those allegations fall well short of what is necessary to pierce a corporate veil; if veil-piercing could be based on those facts alone, the veil of many corporations could easily be pierced. The Plaintiffs also allege that between July 2018 and December 2018—the period when they claim that their union dues and vacation pay were not paid as contractually required—the Debtor deposited over $10,000 from his "business accounts" into his retirement accounts. As will be explained below, this additional allegation is not enough to support veil-piercing.

---

[8] The Plaintiffs' pending motion for leave to file an amended complaint seeks only to correct the issue regarding the attorney's signature. That change would not resolve the standing issues, and the motion will be denied.

A corporation is presumed to be separate and distinct from its officers, shareholders, and directors. *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033 (1st Dist. 2007). Under Illinois law, a corporate veil may be pierced and an individual owner charged for a corporate debt when the corporation is used as a mere instrumentality to conduct that individual's business. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (citing *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491 (2d Dist. 2005)). An individual will not be held personally liable unless there is such unity of interest or ownership between an individual and a corporation that their separate personalities cease to exist and an adherence to the fiction of a separate corporate existence would sanction fraud or promote injustice. *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985) (citations omitted).

To meet the first element, a plaintiff must demonstrate that the corporation was really a mere sham for its owners. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (citation omitted). Courts consider a number factors in deciding whether this unity of interest and ownership exists:

> inadequate capitalization; failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or other entity to creditor detriment; failing to maintain an arm's-length relationship among related entities; and whether the corporation is a mere façade for a dominant owner.

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012) (citing *Fontana*, 362 Ill. App. 3d at 503). To state a plausible claim, a plaintiff must plead that there was an actual unity of interest rather than just an opportunity to create such a unity of interest. *Judson Atkinson Candies*, 529 F.3d at 380-81 (citations omitted).

If the first element is established, then there must also be a finding that not allowing the veil-piercing would either sanction fraud or promote injustice. *Van Dorn*, 753 F.2d at 570. The proof required to meet this element is "less than an affirmative showing of fraud" but more than the mere "prospect of an unsatisfied judgment." *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 522-23 (7th Cir. 1991). "[C]ourts that properly have pierced corporate veils to avoid 'promoting injustice' have found that, unless it did so, some 'wrong' beyond a creditor's inability to collect would result[.]" *Id.* at 524. "Some element of unfairness, something akin to fraud or deception or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Pederson v. Paragon Pool Enterprises*, 214 Ill. App. 3d 815, 822 (1st Dist. 1991) (citation omitted).

In the Second Amended Complaint, the Plaintiffs make no claim that Custom Curbs was a sham or that there was a unity of interest between Custom Curbs and the Debtor sufficient to compel ignoring their separate existences. Likewise, they make no claims of fraud and do not allege any facts that would suggest that failing to pierce the corporate veil here would promote injustice or be contrary to public policy. They plead nothing more than an

inability to collect a debt—a circumstance that does not, in and of itself, support veil-piercing. *Sea-Land Services*, 941 F.2d at 524. Because the Second Amended Complaint is wholly devoid of factual allegations to support any of the required elements of veil-piercing, dismissal is appropriate. *Iqbal*, 556 U.S. 678-79.

In what appears to be a last-ditch effort to avoid dismissal, the Plaintiffs allege that the Debtor "deposited" over $10,000 into his retirement accounts taken from his "business accounts" between July 2018 and December 2018. Interestingly, the Plaintiffs do not allege that the "deposited" money came from Custom Curbs' accounts or involved Custom Curbs funds at all.[9] That failure undercuts any relevance that the allegation might have to piercing the veil of Custom Curbs. But even if that failure is just sloppy drafting and the Plaintiffs meant to allege that the money came from Custom Curbs, they also do not allege that any money received by the Debtor was not owed to him by Custom Curbs or that the payments were related to anything other than legitimate obligations of Custom Curbs. They do allege that the Debtor ran the day-to-day operations of Custom Curbs, supporting an inference that the Debtor himself was entitled to wages and benefits from Custom Curbs. But the Plaintiffs make absolutely no effort in their Second Amended Complaint to develop any theory by which the allegations regarding the deposits into the Debtor's retirement accounts—even if made with funds from Custom Curbs—would support

---

[9] In his Statement of Financial Affairs, the Debtor identified another business he owned in addition to Custom Curbs. Thus, the Court cannot assume that a generic reference to the Debtor's "business accounts" is a reference to Custom Curbs' accounts.

piercing the corporate veil. Further and importantly, in their brief in response to the motion to dismiss, the Plaintiffs make no argument whatsoever regarding the deposits into the Debtor's retirement accounts and do not even discuss how the allegations regarding the deposits might support veil-piercing.

The only argument made by the Plaintiffs to support veil-piercing is their conclusory assertion that the Debtor participated in conversion of the Plaintiffs' assets. But as will be explained below, the Plaintiffs have failed to state a plausible claim for conversion. Their circular argument, that because they have stated a claim for conversion—which they have not done—they have also stated a cause of action for veil-piercing, wholly fails. The Plaintiffs have not stated a plausible claim that the Debtor is liable to them for the debts of Custom Curbs, and their request to pierce the veil of Custom Curbs must be denied.


*C. Conversion and Willful and Malicious Injury*

The Plaintiffs attempt to state a cause of action to except from discharge the debt they claim is owed to them by the Debtor by asserting that the Debtor caused a willful and malicious injury to their property. 11 U.S.C. §523(a)(6). As previously stated, they have failed to state a plausible cause of action for willful and malicious injury to property.

A creditor claiming that a debt is nondischargeable under §523(a)(6) must prove three elements: (1) injury caused by the debtor, (2) willfulness, and (3) malice. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citations omitted). In this context, "willful" modifies "injury" and requires "a

deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Actions are willful when both the act and resulting injury are intended. *Id.* at 61-62. Willfulness can be established by demonstrating either the debtor's motive to inflict injury or that the debtor knew his act was substantially certain to cause injury. *First Weber Group*, 738 F.3d at 774 (citing *Bukowski v. Patel*, 266 B.R. 838, 843-44 (E.D. Wis. 2001)); *Chuipek v. Gilmore (In re Gilmore)*, 590 B.R. 819, 835 (Bankr. N.D. Ill. 2018). Actions are considered malicious if they are taken without just cause or excuse or in conscious disregard of one's duties. *First Weber Group*, 738 F.3d at 774. Breaches of contract, even if intentional, are generally not excepted from discharge under §523(a)(6). *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011).

The Plaintiffs largely ignored the pleading requirements in their attempt to state a cause of action under §523(a)(6). As set forth above in the discussion regarding their lack of standing, the Plaintiffs failed to allege any actual, concrete injury to themselves or their property. They say that the Debtor knew that they would be harmed by the nonpayment of their dues and vacation pay to the entities to which the payments were owed, but they do not allege that they actually suffered such harm. They also failed to explain in their Second Amended Complaint or their brief how such nonpayment rises to the level of wrongful conduct required to sustain an exception to discharge. They attach the label of "willful and malicious" to their description of the Debtor's conduct

but allege no specifics to support their claims. They allege no facts that suggest animosity by the Debtor toward the Plaintiffs and no facts that would support a finding of reckless disregard of the Debtor's duties. All creditors who are not paid presumably suffer some injury. Not all nonpayments, however, are intended to inflict injury or occur without just cause or in conscious disregard of one's duties. Sometimes, as here, businesses fail, run out of money, and cannot pay all of their debts. Under such circumstances, the provisions of §523(a)(6) are just simply not implicated.

In their brief, the Plaintiffs skipped any meaningful discussion of the requirements of §523(a)(6) and simply assert that the Debtor knows what they are claiming from him and, in any event, he participated in a conversion of their assets. Because, as set forth above, breaches of contract generally cannot support a claim under §523(a)(6), the Plaintiffs instead argue that they have stated a cause of action for the intentional tort of conversion. But they have not done so.

To state a cause of action for conversion under Illinois law, applicable here because the transactions occurred in Illinois, a party must establish four elements: (1) unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over the plaintiff's property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) proof of demand for possession of the property. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013) (citing *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886 (1st Dist. 1990)).

Although money may be the subject of conversion, "it must be capable of being described as a specific chattel[.]" *In re Thebus*, 108 Ill. 2d 255, 260 (1985). "[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Id.* (citation omitted); *see also Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988).

In their Second Amended Complaint, the Plaintiffs failed to identify any of their property that was taken by the Debtor or that is wrongfully controlled by the Debtor now. To the contrary, they admit that the deductions for union dues and vacation benefits were properly taken from their gross pay. Thus, they cannot claim that the taking of those deductions alone constituted conversion. But they also do not allege that a fund was created by Custom Curbs or the Debtor to pay the union dues or benefit funds or that Custom Curbs ever had the funds on hand to pay the union and vacation fund the amounts shown as deducted. They state no more than that a debt remains unpaid, and, pursuant to the collective bargaining agreement as discussed above, that debt was owed to the union and the vacation fund rather than the Plaintiffs. As a matter of Illinois law, pleading only the existence of a general debt is not enough to state a plausible cause of action for conversion. *Thebus*, 108 Ill. 2d at 260.

Having failed to identify any property that was actually converted, the Plaintiffs have also failed to allege a plausible claim that they are entitled to immediate possession of such unidentified property. Although they do assert that they have a right to immediate possession of the money deducted from

their paychecks, they fail to reconcile that assertion with their admissions elsewhere that it is the union and vacation fund that are actually entitled to the money. Interestingly, they claim that they served a demand for the return of the property on the Debtor, but in fact, the demand was served by Central Laborers' on Custom Curbs for the benefit of the union and vacation funds. None of the elements of a cause of action for conversion under Illinois law were plausibly pleaded by the Plaintiffs here. Thus, they have not stated a plausible cause of action to except their claimed debt from the Debtor's discharge under §523(a)(6).

### IV.   Conclusion

The Second Amended Complaint alleges no more than that a debt was unpaid by Custom Curbs at the time the business closed. The Plaintiffs have not alleged any specific, concrete injury to themselves because of the nonpayment. Further, the Plaintiffs failed to allege sufficient facts to support piercing the corporate veil of Customs Curbs or finding that the Debtor converted property of the Plaintiffs. The type of debt here is not one that is routinely excepted from discharge; the Plaintiffs cite no authority to the contrary.

This Court previously told the attorney for Central Laborers' and the Plaintiffs that a second amended complaint could not withstand a motion to dismiss unless there was "a whole more to the story" than what was pleaded in the First Amended Complaint. Nothing more of substance is pleaded in the

Second Amended Complaint, and it must therefore be dismissed. Having given the Plaintiffs and their predecessor, Central Laborers', an opportunity to amend after having spent significant time explaining the issues in its prior oral ruling, the Court finds no reason to grant further leave to amend; another amended complaint would not withstand another motion to dismiss. The Plaintiffs' pending motion for leave to amend must also be denied. This adversary proceeding will be dismissed with prejudice.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###